```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| **EDGARDO COLON,**      ) | |
|     Petitioner,      ) | |
|                     ) | |
|         V.      ) | Civ. No. 04-cv-10280-NG |
|                     ) | |
| **UNITED STATES,**      ) | |
|     Respondent.      ) | |

GERTNER, D.J.:

**MEMORANDUM AND ORDER RE:**
<u>**MOTION TO VACATE SENTENCE AND MOTION TO AMEND**</u>
**January 31, 2005**

Petitioner Edgardo Colon ("Colon") filed a motion to vacate, set aside, or correct his sentence ("motion to vacate") pursuant to 21 U.S.C. § 2255 and the Fifth and Fourteenth Amendments on February 10, 2004. On June 30, 2004, Colon filed a motion to amend [document # 11], seeking to add a claim under the Sixth and Fifth Amendments pursuant to <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). Both motions are opposed by the government. For the reasons stated below, both motions are hereby **DENIED.**

I.   <u>BACKGROUND</u>

Colon, along with six others, was indicted by a federal grand jury on August 24, 2000, for distribution of heroin and conspiracy to distribute heroin.[1]  Colon indicated that he would

---

[1] The August 24 indictment was the second superseding indictment returned in this case.  The original indictment, returned on January 27, 2000, charged Colon and six others -- all of whom were alleged to be members of the street gang Latin Gangsta Disciples ("LGD") -- with conspiracy to distribute heroin.  Colon was also charged with distribution.  The first superseding indictment was returned on May 18, 2000, and added additional substantive counts against Colon's co-defendants.  The government sought the second superseding indictment to add drug weight allegations in accordance

be willing to plead guilty to the substantive count but wished to preserve his right to contest the drug amounts in the conspiracy charge. This Court severed the conspiracy counts in the indictment from the substantive charges on October 1, 2001. See United States v. Colon, 165 F. Supp. 2d 67 (D. Mass. 2001). On October 9, 2001, Colon pled guilty to the substantive counts of the indictment, which alleged that he had sold approximately 1.2 grams of heroin.

On February 21, 2002, the United States Probation Office issued its final Presentence Investigation Report ("PSR"). The PSR concluded that Colon was responsible for at least 1,000 grams of heroin. Colon objected to the drug weight calculations in the PSR on a number of grounds, including the use of statements from the government's cooperating witnesses.

This Court conducted an evidentiary hearing on February 28, 2002, and March 1, 2002, to determine the drug weights that should be attributed to Colon and his co-defendants.[2] The government presented, among other evidence, videotapes of LGD meetings; audiotapes of conversations the defendants had with one another; testimony from a Drug Enforcement Agent who conducted surveillance of heroin buys from Colon and others; plea colloquies from co-defendants Roberto Pagan ("Pagan") and Kenny

---

with Apprendi v. New Jersey, 530 U.S. 466 (2000).

[2] This was followed by two additional days of hearings on March 20 and March 21, 2002, to impose sentence.

Cruz ("Cruz"); and the testimony of cooperating witness Lawrence Guzman ("Guzman").

This Court determined that Colon and four co-defendants were each responsible for 1-3 kilograms of heroin.  I sentenced Colon to 188 months' imprisonment and three years of supervised released; the judgment of conviction entered on June 27, 2002.[3]  In reaching this calculation, I "trac[ed] what [each defendant] distributed and with whom, and what they said about the enterprise." United States v. Flores, 230 F. Supp. 2d 138, 246 (D. Mass. 2002).  Specifically, I relied on the following evidence:

| | | |
|---|---|---|
| a) | Direct sales by all defendants: | 108 grams |
| b) | Evidence of other sales deduced from statements made during the investigation: | 54 grams |
| c) | Historical sales by Pagan: | 542-828 grams |
| d) | Historical sales by Cruz: | 427-499 grams |
| e) | Historical sales by Paul Rios: | 165-248 grams |
| f) | Historical sales by Hector Gomez: | 13-27 grams |
| | **TOTAL:** | **1,309-1,764 grams** |

Id. at 146.  All findings as to drug weight were made under a clear and convincing standard, id. at 142, even though I was only required to make these findings under a less stringent preponderance of the evidence standard.  See United States v. LaBoy, 351 F.3d 578, 581 n.5 (1st Cir. 2003).[4]

---

[3] In a sentencing memorandum issued the same day, I stated that "on this record, by whatever measure, that estimate of drug quantity is a conservative one." United States v. Flores, 230 F. Supp. 2d 138, 144 (D. Mass. 2002).

[4] In LaBoy, the First Circuit upheld the sentence of one of Colon's co-defendants.  In noting that this Court made findings of fact under the clear and convincing standard, the First Circuit asserted that the use of this standard "emphasize[s] the strength of the evidence."  351 F.3d at 581 n.5.

A.   **Plea Colloquies of Pagan and Cruz**

Neither Pagan nor Cruz agreed to cooperate with the government in the prosecution of other defendants. Rather, the government introduced their plea colloquies concerning their own roles in the drug distribution activities of LGD.[5] Id. at 146. Pagan and Cruz both stated that they worked with Colon to fill customer requests and that the group was dealing at least 100 bundles[6] a day in January of 2002. Id. at 147. Even more significantly, Pagan stated that, from the early fall of 1999 through January of 2000, he distributed 30 bundles a day for Colon. Id. at 140. In combination with the weight distributed by other members of LGD, this made Pagan responsible for at least 1 kilogram of heroin. Id. This Court concluded that "[i]f Pagan is responsible for at least 1 kilogram for that four-and-a-half-month period, plainly so [is] Edgardo [ ] Colon." Id. at 147.

At the evidentiary and sentencing hearings, Colon argued that the Pagan and Cruz admissions "were the product of a negotiation, . . . not truth" and should therefore be given no weight. Id. Because those statements were sworn under oath to be true, I rejected that argument on policy grounds. Id. Nevertheless, this Court tested the Pagan and Cruz admissions

---

Colon did not appeal his sentence.

[5] In both cases, the government prepared written statements of fact that were explicitly adopted by the defendants at their Rule 11 colloquies. Id. at 146 n.15.

[6] A bundle is the equivalent of .23 grams.

against audio and videotapes presented by the government in which Pagan and Cruz described their working relationships with Colon. Id. In addition, "[t]he transcripts of conversations with Edgardo Colon -- his own words -- amply confirm his responsibility for dealing at the level of 1 kilogram, at the least." Id.

### B. Testimony of Lawrence Guzman

Lawrence Guzman was one of four cooperating witnesses used by the FBI in its investigation of the LGD. Though none of the controlled purchases of heroin in the underlying case was made by Guzman, he testified at the evidentiary hearing on March 1, 2002, about observations he made of heroin sales by other LGD defendants during the period charged in the indictment.

Following Guzman's testimony on March 1, 2002, this Court voiced skepticism about the value of his testimony, stating that Guzman "was not the strongest witness" and that I "had higher expectations for this witness than I saw." Later that same day, I made clear my view of Guzman's testimony: "it's a question of looking at Mr. Guzman . . . as corroboration, not necessarily as independent evidence." At the sentencing hearing on March 21, 2002, I made essentially the same point, noting that "if Mr. Guzman were the only witness, it would be a different conclusion. But the government's case is far stronger than that." Perhaps the strongest indicator of my doubts about Guzman's credibility

is the fact that his testimony is not mentioned once in the Court's comprehensive sentencing memorandum.

### C. Disclosures of Guzman's Perjured Testimony

On March 21, 2003, Assistant United States Attorney John Wortmann sent a letter to all defendants disclosing that Guzman perjured himself when he testified at the evidentiary hearing. Specifically, the letter stated that Guzman failed to reveal the following information about his own criminal history:

1. Guzman failed to reveal that he committed an armed robbery of a marijuana dealer in January of 2002.
2. Guzman failed to reveal that he had been selling cocaine for almost ten years and was still selling cocaine at the time of his testimony.
3. Guzman failed to reveal that he smoked 2-3 joints of marijuana every day, snorted cocaine at least once a week and after each sale of cocaine, and drank 5 drinks per sitting at least 3 times a week.

Prior to Guzman's testimony, however, the government disclosed substantial impeachment material to the defendant, including Guzman's lengthy criminal record and history of drug use and drug trafficking. Indeed, Guzman was cross-examined on precisely these grounds by Colon's counsel as well as counsel for his co-defendants.[7]

## II. ANALYSIS

---

[7] At the sentencing hearing, Colon's counsel described Guzman's testimony as "devastating" to the government's case: "Mr. Guzman . . . couldn't tell his right hand from his left hand, who couldn't answer a question straight, and who didn't -- if I didn't tell him his name, he wouldn't have known it. The man was devastating on the stand for purposes of the government's position on weight."

A.   **Motion to Amend**

In his motion to amend, Colon seeks to add a claim that his Sixth Amendment right to trial by jury and his Fifth Amendment right to due process were violated when this Court "increased [p]etitioner's sentence beyond the maximum range that his guilty plea for distribution of two grams would have permitted."[8]  Colon asserts the same claim with respect to the Court's four level enhancement based upon its finding that Colon was an organizer of the LGD distribution ring.[9]  Colon contends that this amendment is timely pursuant to Federal Rule of Civil Procedure 15 because it relates back to his original habeas motion and a final judgment has not yet been entered on that motion.  See Fed.R.Civ.P. 15(c).

The government opposes the motion to amend on the grounds that it is untimely and futile.  See, e.g., Correa-Martinez v. Arrillaga-Belandez, 903 F.2d 49, 50 (1st Cir. 1990) ("Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters."), overruled on other grounds by Educadores Puertorriquenos en

---

[8] In his motion to amend, Colon based his argument on the Supreme Court's ruling in Blakely v. Washington, 124 S. Ct. 2531 (2004), because the Supreme Court had not yet ruled in United States v. Booker, 543 U.S. __ (2005).  Accordingly, the parties framed their arguments in terms of the retroactivity of Blakely.  Because Booker is now the applicable precedent in federal court, I will discuss the motion to amend in terms of Booker.

[9] Though Colon's motion to amend states that the Court made these findings by a preponderance of the evidence, the record is abundantly clear that the Court actually applied the more stringent clear and convincing standard.

Accion v. Hernandez, 367 F.3d 61 (1st Cir. 2004). First, the government argues that the amendment is untimely even if it relates back to the date of the original petition. Colon's judgment of conviction was entered on June 27, 2002. As noted above, Colon did not appeal his sentence, and he did not file his habeas petition until February 10, 2004. The government asserts that "[a]bsent a determination that [Booker] applies retroactively or a claim that 'the facts' supporting the claim could not have been discovered through the exercise of due diligence, Colon was obligated to bring the proposed claim within one year of 'the date on which the judgment of conviction becomes final.'" 28 U.S.C. § 2255(1); see generally Trenkler v. United States, 268 F.3d at 16, 19 (1st Cir. 2001).

Second, the government argues that the amendment is futile because Booker should not be applied retroactively.[10] The government contends that Booker is a new rule of criminal procedure, see Teague v. Lane, 489 U.S. 288 (1989), a characterization with which Colon rightly agrees in his reply brief.[11] Because the new rule at issue is procedural, it cannot be applied retroactively unless it is a "watershed rule," without

---

[10] In Booker, the Supreme Court instructed that its ruling would apply to all cases on direct review but was silent as to retroactivity. 543 U.S. __, 25 (Breyer, J.).

[11] See Schriro v. Summerlin, 124 S. Ct. 2519, 2523 (2004) ("A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.").

which "the likelihood of an accurate conviction is seriously diminished." Schriro v. Summerlin, 124 S. Ct. 2519, 2520-21 (2004). The government argues that the Booker rule does not meet this test, primarily pointing to the fact that neither Apprendi v. New Jersey, 530 U.S. 466 (2000), nor Ring v. Arizona, 536 U.S. 584 (2002), has been applied retroactively. See Sustache-Rivera v. United States, 221 F.3d 8, 15 (1st Cir. 2000) ("[I]t is clear that the Supreme Court has not made the rule [in Apprendi] retroactive to cases on collateral review."); Summerlin, 124 S. Ct. at 2526 ("Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review."). The ruling in Summerlin is particularly noteworthy: "[W]e cannot confidently say that judicial factfinding *seriously* diminishes accuracy." See id. at 2525 (emphasis in original).

The government also points to the First Circuit's recent decision in Cuevas v. DeRosa, 386 F.3d 367 (1st Cir. 2004), in support of its argument that amendment of Colon's petition would be futile. In Cuevas, the First Circuit held that a § 2255 challenge grounded in Blakely was premature because the Supreme Court had not yet held Blakely applicable to the United States Sentencing Guidelines. Id. at 367-68. That portion of the opinion is no longer good law in the wake of United States v. Booker, 543 U.S. __ (2005). The remainder of the First Circuit's opinion, however, provides a blueprint for the relief appropriate

-9-

here: "[I]f the Supreme Court in the future makes Blakely retroactive, the petitioner may at that time attempt to assert a claim by means of a second or successive § 2255 petition."[12]  386 F.3d at 368.

I find the government's futility argument persuasive, in light of the fact that neither Apprendi nor Ring has been applied retroactively.  Accordingly, I **DENY** the motion to amend without prejudice to Colon's right to assert a Booker claim in the future should the Supreme Court hold that Booker applies retroactively to cases on collateral review.

B.  **Motion to Vacate**

Colon argues that his sentence should be vacated, set aside, or corrected pursuant to 21 U.S.C. § 2255 and the Fifth and Fourteenth Amendments on the basis of Guzman's perjured testimony.  Stating that "the factual support for the weight amounts attributed to both Mr. Pagan and Mr. Cruz came directly from Mr. Guzman's testimony and proffers," Colon asserts that "Guzman's attribution of weight was the lynchpin and sole basis for finding that Mr. Colon was responsible for more than 175 to 187 grams of heroin."  Without placing his argument into any

---

[12] It should be noted that in Cuevas the First Circuit had no choice but to enter such an order.  In that case, petitioner sought leave to file a successive habeas petition under 28 U.S.C. § 2255.  The Antiterrorism and Effective Death Penalty Act allows the filing of successive petitions in severely limited circumstances, one of which is in the wake of Supreme Court precedent holding a new rule to be retroactive to cases on collateral review. See Tyler v. Cain, 533 U.S. 656 (2001).  Because these constraints do not apply to Colon's motion to amend, such an order is not required here, but it is nevertheless appropriate since the circumstances are comparable.

specific legal framework -- other than citation to a Seventh Circuit opinion -- Colon argues that Guzman's testimony cannot be relied upon and that the Court's finding cannot stand. See United States v. Noble, 299 F.3d 907 (7th Cir. 2002) (vacating petitioner's sentence where drug weight was calculated on the basis of unreliable evidence). In addition, Colon makes the sweeping argument that Guzman's "perjured proffers were what caused Pagan and Cruz to admit guilt without challenging their colloquies or the weight behind them."

The government contests Colon's argument that Pagan and Cruz would not have pled guilty had they known of Guzman's full criminal record. Though they received notice of Guzman's perjured testimony, neither Pagan nor Cruz has appealed the Court's judgment, nor have they sought collateral relief under § 2255. Furthermore, the government notes that both Pagan and Cruz pled guilty before Guzman's identity had even been disclosed.

The government then argues that Colon's claims are insufficient to warrant relief under either of the two legal frameworks into which his claims fall.

### 1. Standard for Granting Relief under § 2255

Under § 2255, a petitioner may obtain relief on the basis of perjured testimony. In United States v. Agurs, the Supreme Court noted that it "has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that

the false testimony could have affected the judgment of the jury." 427 U.S. 97, 103 (1976). As the government acknowledges, the Agurs Court also characterized the test for "knowing use of perjury" as whether "the prosecution knew, or should have known, of the perjury." Id.

The government argues that this language should be construed to mean "[a]t most . . . that the knowledge of one prosecutor can be attributed to another for purposes of determining whether the second 'should have known' that specific testimony was false." See Gov. Mot. to Dism. Pet. under 28 U.S.C. § 2255, at 10 n.5.[13] Colon does not contend that the government knew Guzman was perjuring himself when he testified before this Court; accordingly, he argues in his reply brief that the proper standard to be applied is whether the government should have known the testimony was perjured on the basis of adequate background checks on Guzman.

I believe that Colon has correctly stated the applicable standard. See Mastracchio v. Vose, 274 F.3d 590, 600 (1st Cir. 2001) (stating that Giglio v. United States, 405 U.S. 150, 154 (1972), held "that whether nondisclosure results from negligence or design, the prosecutor is responsible"). Nevertheless, Colon

---

[13] This argument is little more than a recitation of the facts of Giglio v. United States, 405 U.S. 150 (1972). The single case cited by the government in support of its contention that the appropriate standard is whether any prosecutor had actual knowledge of the perjury, moreover, pre-dates Agurs. See Green v. United States, 313 F.2d 6, 7 n.2 (1st Cir. 1963) ("[I]t is not enough that perjury be shown; there must be proof that it was committed with the knowledge of the prosecution.").

is not entitled to relief under § 2255.  Regardless of the standard of knowledge to which the government is held, Colon must show that there is a "reasonable likelihood" that the perjured testimony affected the outcome of the case.  As discussed above, I placed very little weight on Guzman's testimony and did not reference his testimony at all in its comprehensive sentencing memorandum.  See Mastracchio, 274 F.3d at 604 (denying relief where perjured testimony was simply cumulative impeachment information).  Colon's argument that Guzman's testimony was central to this Court's findings of drug weight attributable to Colon is without support in the record, and there is no reasonable likelihood that the perjured testimony affected this Court's judgment.  Accordingly, Colon's petition for relief under § 2255 is hereby **DENIED.**

### 2.   Standard for Granting Relief under Rule 33

A § 2255 petitions grounded in claims of perjured testimony may also be treated as a request for a new trial under Rule 33 on the basis of newly discovered evidence.  See Cruz-Sanchez v. Rivera-Cordero, 835 F.2d 947, 948 (1st Cir. 1987); Pelegrina v. United States, 601 F.2d 18, 19 (1st Cir. 1979); United States v. Corson, 2002 WL 547213 (D. Me. 2002).  See also Fed.R.Crim.P. 33(a) ("Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.")  In his reply brief, Colon urges the Court to treat

his motion to vacate as a motion for new trial if relief is denied under § 2255.

As stated by the First Circuit in <u>United States v. Gonzalez-Gonzalez</u>, a defendant seeking a new trial under Rule 33 must "generally" show that:

> (1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of the defendant.

258 F.3d 16, 20 (1st Cir. 2001) (quoting <u>United States v. Wright</u>, 625 F.2d 1017, 1019 (1st Cir. 1980)). "A defendant's new trial motion must be denied if he fails to meet any of these factors." <u>Id.</u> (citing <u>United States v. Falu-Gonzalez</u>, 205 F.3d 436, 442 (1st Cir. 2000)).

The fourth prong of the standard differs, however, depending upon the grounds for the motion. When a Rule 33 motion is based on the government's unwitting use of perjured testimony, the standard is whether "in actual probability [the newly discovered evidence] would result in acquittal if a new trial were granted." <u>Gonzalez-Gonzalez</u>, 258 F.3d at 21; <u>see also</u> <u>United States v. Huddleston</u>, 194 F.3d 214, 221 (1st Cir. 1999) (holding that relief may not be granted under Rule 33 unless "the force of the newly discovered event (i.e., the fact and nature of the perjury) and the content of the corrected testimony are such that *an*

-14-

*acquittal probably would result upon retrial*") (emphasis added). The term "reasonable probability" is interpreted as "a probability sufficient to undermine confidence in the outcome." Id. at 222-23 (citing United States v. Bagley, 473 U.S. 667, 682 (1985)).

If the Rule 33 motion is based on an allegation that the government withheld exculpatory evidence or that the government knowingly used perjured testimony, "a defendant must show that there is a 'reasonable probability' that the missing evidence would have changed the result." Gonzalez-Gonzalez, 258 F.3d at 21-22 (noting that the standard for the government's knowing use of perjury is typically described as a "reasonable likelihood that the false testimony could have affected the judgment of the jury" but finding that the reasonable likelihood and reasonable probability standards "are equivalent").

Under either standard, the government is correct to argue that Colon is not entitled to relief. This Court placed little weight on Guzman's testimony, rendering it immaterial. Colon's argument thus fails to meet prong three of the test for relief under Rule 33. For the same reason, Colon's petition fails to meet the fourth prong of the test, regardless of the standard applied. See United States v. Sepulveda, 15 F.3d 1216, 1220 n.5 (1st Cir. 1993) ("Neither our decisions nor those of other circuits have been sympathetic to new trial claims based solely

on the discovery of additional information useful for impeaching a government witness."). I therefore DENY relief under Rule 33.

### III. CONCLUSION

For the reasons set forth above, the motion to amend and the motion to vacate are hereby **DENIED**.

**SO ORDERED.**

Date: January 31, 2005          **/s/NANCY GERTNER, U.S.D.J.**